SCHLARB *v.* HENDERSON.

[No. 26,774. Filed October 20, 1936. Rehearing denied January 12, 1937.]

*Louis B. Hammerschmidt* and *Milton A. Johnson,* for appellant.

*Seymour Jansen, Clifford V. Du Comb* and *John L. Warrick,* for appellee.

FANSLER, J.—Appellee brought this action to recover damages for personal injuries alleged to have resulted from the negligence of appellant in the operation of an automobile which collided with an automobile in which appellee was riding as a guest.

The first error assigned and presented by the briefs involves the action of the court in excluding the testimony of a physician called by appellant, upon the ground that the subject-matter of the offered testimony is covered by the privileged communications statute.

There is evidence that when the automobiles collided appellee was thrown against the gear-shift lever of the

car in which she was riding, which caused a bruise on her side; that she suffered pain from the injury for more than two weeks, after which she consulted a doctor; that a second physician was called in and, after consultation, appellee was operated three times, the operations involving, among other things, the removal of the appendix. The tissues removed were referred to a third doctor for microscopic examination and analysis. The first two doctors were called as witnesses by appellee and testified fully concerning their examinations and described in detail the condition which they found and the things that were done in the three operations. They testified as to the condition of the appendix and other tissues removed and that they were of the opinion that the appendix was not chronically involved and that the trouble was caused by the injury sustained in the accident and not by a chronic infection. Appellant called the third doctor, who had made the microscopic examination of the tissues removed in the first operation, and offered to prove by him that the appendix was chronically infected, and certain other facts which had a tendency to indicate that the trouble which brought about the necessity of an operation was not caused by the injury received in the collision.

It is clear that none of the doctors were competent as witnesses concerning any facts which they discovered through an examination or operation upon appellee, and that it was error to permit them to testify unless their incompetency was waived by appellee. It was waived as to the first two physicians when appellee introduced their testimony concerning such matters. The question presented is whether or not the waiver of the privilege as to the first two doctors waived it as to the third so as to make him competent to testify concerning her condition at the time of the opera-

tion, which he ascertained from the examination of the tissues removed by the other doctors in the operation.

The purpose of the statute, and of the common-law rule before the statute, was to secure privacy concerning disease and infirmities and to permit having recourse to the advice and assistance of physicians and surgeons without the danger of publicity concerning such private and intimate affairs. But if the details of such private and intimate affairs are voluntarily disclosed, and relied upon as the basis of an action for damages, the inquiry cannot be limited to the version selected by the plaintiff. Appellee voluntarily made the facts concerning the pathological condition of her tissues an issue. She cannot limit the inquiry to the testimony of the witnesses that she selects. By so opening the question she has waived the protection of the statute which insured her privacy concerning such matters. In *Lane* v. *Boicourt* (1891), 128 Ind. 420, 423, 27 N. E. 1111, 1112, 1113, an action for malpractice, appellee and his wife, who had been operated, testified as to all that was done by the appellant doctor at the time of the operation. Appellant also testified without objection. He then called another doctor, who was in attendance as a consulting surgeon at the time of the operation. The trial court refused to permit the consulting surgeon to testify. It is said in the opinion that: "The testimony given by the witnesses of the appellee broke the seal of privacy, and gave publicity to the whole matter. The patient waived the statutory rule. The course pursued laid the occurrence open to investigation. Nothing was privileged, since all was published. . . If a patient makes public in a court of justice the occurrences of the sick room for the purpose of obtaining a judgment for damages against his physician, he can not shut out the physician himself, nor any other who was present at the time covered by the

testimony. When the patient voluntarily publishes the occurrence, he cannot be heard to assert that the confidence which the statute was intended to maintain inviolate continues to exist. By his voluntary act he breaks down the barriers, and the professional duty of secrecy ceases. It would be monstrous if the patient himself might detail all that occurred, and yet compel the physician to remain silent. The principle is the same whether the physician called is a consulting physician, or is the defendant. The opening of the matter to investigation removed the obligation of secrecy as to all, not merely as to one. When the obligation to silence is broken, it is broken for the defendant as well as for the plaintiff. As to all witnesses of the transaction it is fully opened to investigation, if opened at all, by the party having a right to keep it closed. A patient cannot elect what witnesses shall be heard, and what shall not; for if once investigation legitimately begins, it continues to the end. A patient may enforce secrecy if he chooses, but where he himself removes the obligation he can not avail himself of the statute to exclude witnesses to the occurrence." The reasoning applies with equal force to the case at bar. The appellee might have elected to exclude from the record all information as to her physical condition as disclosed by the medical or surgical examination of her tissues, but, since she has thrown aside the veil of secrecy and given publicity to the matter, she cannot exclude the testimony of one doctor, who gained his information as a result of the operation, because it may be unfavorable to her, while taking advantage of the testimony of other doctors, which is favorable to her. In the case of *Penn Mutual Life Insurance Co.* v. *Wiler* (1885), 100 Ind. 92, 102, 50 Am. Rep. 769, 772, it is said that: "If the plaintiff's examination of said medical examiner as a witness could be regarded as a waiver of a privilege, the consent of the patient,

or of one entitled to stand as his representative, to the production in evidence of facts learned in a professional capacity by one physician, could not be construed as consent to the divulging of other confidential communications to other physicians." But this language must be applied to the facts under consideration in that case. The testimony of the other physicians which was offered involved other transactions, and not the same one concerning which the physician called testified, and it is also noted that the physician called was not subject to the privilege. At the time he procured the information concerning which he testified, he was the agent of the life insurance company, examining appellee for the company, and appellee was not his patient.

It was error to exclude the evidence, which might have affected the result, and for this error the cause must be reversed.

Appellant complains of an instruction which told the jury that if the negligence of the defendant concurred with the negligence of the driver of the car in which the plaintiff was riding, as a proximate cause of her injury, she could recover. Appellant contends that, since the complaint alleges that the driver of the car in which the plaintiff was riding was operating his car lawfully and in a careful manner, proof of the allegation was necessary in order to permit a recovery. This view cannot be concurred in. We interpret the case of *Kuhn* v. *Stephenson* (1928), 87 Ind. App. 157, 161 N. E. 384, as holding that the instruction there given was not "reversible" error. That is, that, in view of the other instructions, appellant's rights were not prejudiced, notwithstanding the instruction in question was subject to criticism. A complaint may allege negligence against two or more persons, and a recovery may be had against one without proof of negligence as to the other. Negligence, or lack of it, on the part of

the driver of the car in which plaintiff was riding, does not necessarily affect the question of whether defendant was guilty of negligence which was a proximate cause of plaintiff's injury. An allegation as to the negligence, or lack of negligence, of the driver of the car in which plaintiff was riding was not necessary in order to state a cause of action against the defendant, and it was not necessary therefore that such an allegation be proven.

Instruction No. 7 is in part as follows:

"I instruct you Gentlemen of the Jury it is negligence as a matter of law in this state for a driver of an automobile to drive and operate the same upon a highway in this state at such a speed that the driver and operator thereof could not stop the same within the distance that objects could be seen ahead of him.

"If you should find, therefore, by a fair preponderance of the evidence that the defendant herein drove and operated his automobile at the time and place in question herein at such a speed that he could not stop the same within the distance that the automobile in which plaintiff was sitting could be seen ahead of him, then I instruct you that said defendant was negligent. . . ."

This is not a correct statement of the law. In the recent case of *Opple et al.* v. *Ray* (1935), 208 Ind. 450, 195 N. E. 81, it was held that negligence, with respect to speed and the visibility of objects on the road ahead, is a question of fact for the jury. In view of the lengthy discussion in that case, it is not deemed necessary to extend this opinion upon the subject.

It is contended that several of the instructions are not applicable to the evidence. But instructions are not open to that objection if they are within the issues and pertinent to any question of fact which the jury may properly consider under the

evidence, or any legitimate inferences which may be drawn from the evidence. There is no contention that the instructions fail to meet this requirement.

Complaint is made of an instruction which is said to be based upon the doctrine of "last clear chance," but the instruction is not upon that subject. The doctrine referred to affects only cases in which the injured party was guilty of negligence. The instruction which is objected to deals with a situation in which the injured party was not guilty of negligence.

Complaint is made of the instruction which summarizes the charges of negligence in plaintiff's complaint, on the ground that it tells the jury that failure to turn his automobile so as to avoid the collision, failure to keep a lookout in the direction in which he was proceeding, etc., constituted negligence. But it does not. It merely advises the jury of the character of the charges of negligence. Other instructions which, with the exceptions pointed out, correctly stated the law, clearly advised the jury as to when failure to turn out to avoid a collision, or to keep a lookout in the direction in which he was proceeding, would constitute negligence.

The complaint and answer are set out at length in one of the instructions, and in another there is a brief summary of the issues. Appellant complains of the repetition and of the instruction which sets out the pleadings. While repetition is not to be commended, the jury could not have been misled by the instructions referred to. It may well be doubted whether an instruction which sets out lengthy pleadings in full is helpful, but the form in which instructions are given is within the discretion of the trial judge.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.